# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 8, 2021          Decided June 1, 2021

No. 20-1014

TRINITY SERVICES GROUP, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 20-1055

———

On Petition for Review and Cross-Application for
Enforcement of an Order of the
National Labor Relations Board

———

*Frederick C. Miner* argued the cause for petitioner. With him on the briefs was *S. Libby Henninger*.

*Kellie Isbell*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Peter B. Robb*, General Counsel, *Ruth E. Burdick*, Acting Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Usha Dheenan*, Supervisory Attorney.

Before: GARLAND[*] and RAO, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: Trinity Services Group asks us to review an order of the National Labor Relations Board. The Board cross-petitions for enforcement. We must decide whether employers are entitled to express opinions that the Board considers baseless.

I.

This case began with a mix-up. In December 2017, the timecard of Trinity employee Marisol Victoria indicated that she had earned three days of paid leave. The company's records indicated otherwise. The truth? Less than clear. But Victoria's boss, Sergio Rivera, thought he knew the source of the problem.

Victoria belonged to United Food and Commercial Workers Local 99. Thanks to the union, she and her coworkers had a unique paid-leave plan — different from the plan at Trinity's other, nonunionized facilities. Yet that meant headaches for Rivera, since the parallel schemes were too much for Trinity's bookkeeping software. So when Victoria's timecard disagreed with his records, Rivera pinned the blame on Local 99:

- "[T]hat is a problem that the Union created regarding [paid leave]."

- "You need to fix that with the Union."

---

[*] Then-Judge Garland was a member of the panel but did not participate at oral argument or in the disposition of this case.

- "[T]hat's the problem with the Union." J.A. 7.

A split panel of the National Labor Relations Board found that these remarks "had a reasonable tendency to interfere with" employees' labor rights — a violation of 29 U.S.C. § 158(a)(1).[1] *Id*. In the majority's view, there was "no objective basis for blaming the Union, rather than [Trinity]" for the mix-up. *Id.* at 8. And because the remarks came amidst "ongoing contract negotiations and grievance proceedings" over paid leave, they "would undermine the Union's status" and "cause an employee to lose faith" in Local 99. *Id.*

Chairman Ring dissented. While he found it "unfair to lay the blame entirely at the Union's feet," *id.* at 10, he reasoned that Rivera's remarks were a "lawful expression" of "personal opinion," protected under 29 U.S.C. § 158(c).[2] *Id.* at 9.

These petitions followed. We review the Board's factual findings for substantial evidence. *See Davidson Hotel Co. v. NLRB*, 977 F.3d 1289, 1292 (D.C. Cir. 2020).

---

[1] "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]" 29 U.S.C. § 158(a)(1).

[2] "The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c).

4

II.

Section 8(c) of the National Labor Relations Act protects an employer's right to "express[] . . . any views, argument, or opinion[.]" 29 U.S.C. § 158(c); *see also Chamber of Com. of U.S. v. Brown*, 554 U.S. 60, 67 (2008). Unless the employer threatens "reprisal or force" or promises "benefit[s]," such expressions "cannot be used as evidence of an unfair labor practice." *Sasol N. Am. Inc. v. NLRB*, 275 F.3d 1106, 1112 (D.C. Cir. 2002) (internal quotation marks omitted).

The Board's order here is based solely on Rivera's remarks. These remarks are "opinion[s]" under § 8(c). And they contain no threats or promises. True, threats and promises "may be subtle or veiled." *Int'l Union of Elec., Radio, & Mach. Workers, AFL-CIO v. NLRB*, 289 F.2d 757, 762 (D.C. Cir. 1960). But Rivera's remarks — assigning blame, offering advice, and expounding "the problem with" Local 99 — evoke no future consequences. *See generally* Robert Nozick, *Coercion*, *in Philosophy, Science and Method* 440 (Sidney Morgenbesser et al. eds., 1969). So no reasonable employee would have spied threats or promises lurking behind them. *See Advanced Life Sys. Inc. v. NLRB*, 898 F.3d 38, 44–45 (D.C. Cir. 2018) ("The inquiry is objective.").

The Board concedes as much, but it urges us to recognize an exception under § 8(c) for misstatements involving no threat or promise. Respondent's Brief 8. In its view, § 8(c) "provides no safe harbor" for "materially false statements" that an employer "has reason to believe will mislead his employees." *Id.* at 8, 15 (cleaned up). And because (says the Board) it was "patently false" to blame Local 99 for "administration of the [paid-leave plan]," § 8(c) does not apply here. J.A. 8.

Where does the Board find this misstatement rule? Certainly not in the statute. "Section 8(c) does not require fairness or accuracy," *N. Star Steel Co.*, 347 N.L.R.B. 1364, 1367 n.13 (2006) (citation omitted), and it says nothing about materiality or knowledge. Neither did Congress hedge. Absent threats or promises, § 8(c) unambiguously protects "*any* views, argument, or opinion" — even those that the agency finds misguided, flimsy, or daft. 29 U.S.C. § 158(c) (emphasis added).[3]

No precedent holds otherwise. The Board relies chiefly on *National Labor Relations Board v. Ingredion Inc.*, 930 F.3d 509, 516 (D.C. Cir. 2019), where we agreed that an employer's misstatements violated § 8(a)(1) of the Act. But the misstatements in *Ingredion* were implied promises — a "better contract," a retirement package that employees "would like" — unprotected by § 8(c). *Id.* And *Ingredion* did not claim to find any new exceptions in the statutory text. *Westminster Community Hospital, Inc.*, 221 N.L.R.B. 185, 185 (1975), *enforced mem.*, 566 F.2d 1186 (9th Cir. 1977), is no different. There, the employer implied that "benefits would be increased in the future if the employees voted against the Union" — another unprotected promise. *Id.*

So here is the short of it. Rivera expressed "opinions" containing "no threat of reprisal or force or promise of benefit." 29 U.S.C. §158(c). Sound or unsound, such expressions "shall not constitute or be evidence of an unfair labor practice[.]" *Id.*

---

[3] Of course, this does not mean that anything goes. Suppose a mendacious manager tells workers that the union has cancelled tonight's election — duping them into missing the vote. Even if the manager avoids threats and promises, the Board must still ask whether his chicanery "represent[s] the expression of 'views, argument, or opinion' that section 8(c) covers." *Microimage Display Div. of Xidex Corp. v. NLRB*, 924 F.2d 245, 251 n.2 (D.C. Cir. 1991).

6

And since the Board found a violation based solely on Rivera's remarks, substantial evidence does not support its order.

\*

Perhaps a no-misstatement rule would be good labor policy. Or perhaps not. But it is not the policy reflected in § 8(c). "Congress, when it enacted § 8(c), determined the dangers that free expression might entail . . . were a lesser risk than to have the Board police employer or union speech." *NLRB v. Gen. Elec. Co.*, 418 F.2d 736, 773 (2d Cir. 1969) (Friendly, J., concurring and dissenting). "If policy considerations suggest that [this] scheme should be altered, Congress must be the one to do it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 778 (2020). We grant Trinity's petition for review and deny the Board's cross-application for enforcement.

*So ordered.*