# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 21, 2021        Decided March 1, 2022

No. 20-1319

WENDT CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 20-1328

———

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

———

*Ginger D. Schroder* argued the cause for petitioner. With her on the briefs was *Linda H. Joseph.*

*Milakshmi V. Rajapakse*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Julie Brock Broido*, Supervisory Attorney.

Before: PILLARD and WILKINS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge.*

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*:  Wendt Corporation ("Wendt") petitions for review of a decision and order of the National Labor Relations Board ("NLRB" or "Board"), finding that Wendt engaged in unfair labor practices in violation of the National Labor Relations Act ("NLRA" or "Act").  For the reasons discussed below, we grant in part and deny in part the petition for review.  Likewise, we grant in part and deny in part the cross-application for enforcement.

**I.**

Wendt is a company that designs and manufactures equipment for the scrap-metal recycling industry.  Shopmen's Local Union No. 576 (the "Union") is the exclusive collective-bargaining representative of 33 employees who work in the warehouse and production shop of Wendt's New York-based manufacturing facility.  The Union filed several charges with the National Labor Relations Board, alleging that Wendt committed unfair labor practices in violation of the NLRA, citing various incidents and company actions affecting unit employees.  Between September 10-14, 2018, and November 5-7, 2018, an Administrative Law Judge ("ALJ") held a hearing on the Union's charges.  The ALJ found that Wendt engaged in numerous unfair labor practices in violation of Sections 8(a)(1), (3), and (5) of the NLRA.  The Board rejected Wendt's exceptions and almost entirely adopted the ALJ's findings, save for two determinations that are not implicated by the petition.  Wendt seeks review of the Board's determination that it engaged in unfair labor practices in violation of Sections 8(a)(1), 8(a)(3), and 8(a)(5) of the NLRA, 29 U.S.C. §§ 158(a)(1), (3), (5).  The Board submitted a cross-application for

enforcement. Central to this dispute are five incidents and actions Wendt took that affected unit employees.

First, in October 2017, John Fricano, a unit employee, loaded an item onto a forklift and moved the forklift into a paint booth to paint it. As Fricano began to paint the item, Wendt operations director Richard Howe approached him and asked him whether he felt that painting with the forklift inside the booth was safe. Howe testified that Fricano's eyes "doubled in size" and Fricano agreed that it was not safe. Joint Appendix ("J.A.") 83. Two days later, Wendt plant manager Daniel Voigt summoned Fricano to the main office to question him about the forklift incident. Fricano requested the presence of a union representative during questioning, but Voigt denied the request and represented to Fricano that it would not be necessary because he only had to answer some questions. When Fricano arrived in the office, Wendt's human resources official, Denise Williams, gave him a disciplinary document that reflected Wendt's description of the forklift incident. The document included a section for Fricano to indicate agreement or disagreement with Wendt's statement on the incident by checking a box, and it had a space for him to leave comments. Fricano refused to sign the document or leave a comment, but he checked the box indicating disagreement. Wendt then suspended Fricano for three days without pay. Based on this incident, the Board ruled that Wendt violated Section 8(a)(1) of the Act by refusing a unit employee's request for a union representative during an investigative disciplinary interview.

Next, on February 8, 2018, while negotiations for a collective-bargaining agreement with the Union were ongoing, Wendt temporarily laid off 10 unit employees. Before the layoffs, Voigt had made threatening comments toward pro-union employees, created an impression of surveillance of pro-union employees, and represented that employees who

supported the Union would be laid off. The Board held that Wendt violated Section 8(a)(5) and (1) of the Act by unilaterally laying off 10 unit employees in the absence of a bargaining impasse.

Further, William Hudson, a highly skilled welder and active union leader, was one of the 10 unit employees temporarily laid off. He was also a member of the Union's bargaining team. On April 6, 2018, two months after the layoff, Wendt recalled Hudson to work and exclusively assigned him to "the saw," a task generally reserved for unspecialized workers, for over four months. Wendt assigned all other recalled welders, as well as certain temporary employees, to perform welding work. Wendt asserted that it assigned Hudson to saw work because Hudson had not operated the saw and needed experience. Additionally, Hudson observed that other recalled employees were working overtime, and so he also requested to work overtime. Wendt denied his requests multiple times, but granted overtime to other welders and at least one employee on a short-term saw work assignment. The Board found that Wendt's decisions to exclusively assign Hudson to low-skilled saw work and deny him overtime were motivated by anti-union animus, in violation of Section 8(a)(3) and (1) of the Act.

The next issue concerns Wendt's administration of performance reviews and wage increases. Pursuant to its employee handbook, Wendt provides employees with performance reviews on an annual basis. In 2016, for example, Wendt provided annual performance reviews and wage increases to all employees—unit and non-unit—in the same time frame. Following the Union's certification for collective bargaining purposes, Wendt evaluated non-unit employees and gave them wage increases in November and December 2017. In November 2017, the Union requested that Wendt provide

unit employees with their 2017 performance reviews based on its understanding of Wendt's past practice of providing performance reviews for unit and non-unit employees alike at roughly the same time. Wendt failed to evaluate unit employees until April 2018, delaying unit employees' performance evaluations and accompanying wage increases for about six months.

During negotiations in May 2018, Wendt proposed a 3.42 percent wage increase for unit employees, retroactive to April 8, 2018, the date Wendt completed unit employees' evaluations. The Union, however, counter-proposed a 4 percent wage increase, retroactive to October 2017, to account for the six-month delay of reviews. Wendt told the Union that its offer of a 3.42 percent wage increase would expire if the Union did not accept it by June 20, 2018. The Union accepted the offer but stated that it wanted to continue bargaining for the increased percentage and retroactivity to October 2017. Wendt's chief negotiator replied, "Fair enough. You can bargain for that." J.A. 127. Later, when the Union renewed its request to bargain for retroactive wage increases, Wendt responded that the parties had already reached an agreement, referencing the Union's acceptance of Wendt's offer for a 3.42 percent wage increase, retroactive to April 2018. The Union responded that there was no final agreement regarding the retroactive wage increases and reminded Wendt that it specifically reserved the right to bargain for further retroactive pay. Wendt refused to bargain with the Union. The Board ruled that Wendt violated Section 8(a)(3) and (1) when it delayed performance reviews, and thereby deprived unit employees of wage increases for approximately six months, and violated Section 8(a)(5) and (1) when it failed to afford the Union an opportunity to bargain over providing annual performance reviews and wage increases from about

November 2017 through April 2018.

Finally, Wendt posted openings for three shop supervisor positions—one recently vacant position and two newly created positions—and promoted three unit employees into the positions. Wendt did not hire anyone to fill the three vacant unit roles. Instead, the new supervisors were required to continue doing some of the unit work from their previous roles, and temporary employees and contractors completed the rest. The Union requested to bargain with Wendt over the newly created supervisor positions, but Wendt refused. The Board held that Wendt violated Section 8(a)(5) and (1) when it unilaterally removed unit work and transferred it to three newly appointed shop supervisors without bargaining with the Union.

## II.

The NLRA guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157; *Midwest Div.—MMC, LLC v. NLRB*, 867 F.3d 1288, 1293 (D.C. Cir. 2017).

On petitions for review of an NLRB order, "we must uphold the judgment of the Board unless its findings are unsupported by substantial evidence, or it acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Novato Healthcare Ctr. v. NLRB*, 916 F.3d 1095, 1100 (D.C. Cir. 2019) (citing *Spurlino Materials, LLC v. NLRB*, 805 F.3d 1131, 1136 (D.C. Cir. 2015); *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 935 (D.C. Cir. 2011)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *NLRB v.*

*Ingredion Inc.*, 930 F.3d 509, 514 (D.C. Cir. 2019) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)). We must therefore "affirm the Board's findings unless 'no reasonable factfinder' could find as it did." *Ingredion*, 930 F.3d at 514 (quoting *Alden Leeds, Inc. v. NLRB*, 812 F.3d 159, 165 (D.C. Cir. 2016)).

We will take each of Wendt's challenges in turn, starting with its argument that the Board's finding of a Section 8(a)(1) violation in connection to the forklift incident involving Fricano was not supported by substantial evidence.

**A.**

Wendt first challenges the Board's finding that it violated Section 8(a)(1) when it denied employee John Fricano a right to a union representative during a disciplinary interview. In *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251 (1975), the Supreme Court held that an employee has a right to union representation in an investigative interview when the employee reasonably believes the interview may result in discipline. *Id.* at 256–62. We discussed the *Weingarten* rule's elements and application in *Circus Circus Casinos, Inc. v. National Labor Relations Board*:

> To prove a *Weingarten* allegation, the general counsel must show (1) the employee made a valid request for a union representative to be present during an investigatory interview; (2) the employee reasonably believed the interview might result in disciplinary action; and (3) the employer compelled the employee to attend the interview without union representation.

961 F.3d 469, 477 (D.C. Cir. 2020) (citations omitted).

8

As indicated, Wendt called in unit employee John Fricano for questioning on the forklift incident, denied his request to be accompanied by a union representative during the interview, and then suspended him for three days without pay.

Substantial evidence supports the Board's finding that Wendt violated Section 8(a)(1). First, when Wendt plant manager Voigt approached Fricano and told him to come to the office to answer questions about the forklift incident, he denied Fricano's valid request for a union representative to be present during the interview. Voigt even told Fricano he did not need a representative because Voigt and the human resources official, Williams, just wanted to ask Fricano a few questions about the incident. Next, the record reflects that Fricano reasonably believed that the interview might result in discipline. For example, consider Wendt operations director Howe's testimony about the moment he approached Fricano as he was about to paint the item while the forklift was in the painting booth. When Howe "asked [Fricano] if he felt that [what he was doing] was safe," Fricano's "eyes doubled in size as he glared at [Howe] and immediately began to accuse other people of telling him to do it." J.A. 550–51. Moreover, Voigt called Fricano in for questioning just two days after the incident, so Fricano had reason to believe that he might face discipline during the meeting. The record therefore supports the Board's finding that Fricano had reasonable cause to believe that the interview would result in disciplinary action against him and that Wendt compelled him to participate without the representation he requested. *See Circus Circus Casinos*, 961 F.3d at 477.

Wendt's argument that Fricano was not entitled to a *Weingarten* representative because it had already made the decision to discipline Fricano and only called the meeting to

inform him that he was being disciplined lacks merit and is belied by the record evidence. At the time of the interview, when Fricano entered the room, Williams handed Fricano a notice of unpaid suspension for three days for a safety code violation. Williams told him that he would be terminated if he committed another violation. Williams invited Fricano to respond to Wendt's statement on the incident by checking a box on the disciplinary document indicating agreement or disagreement, signing his name, and leaving comments. Thus, contrary to Wendt's argument, the "sole purpose of the meeting was [not] to deliver the warning to [Fricano]." *Cf. Jackson Hosp. Corp. v. NLRB*, 647 F.3d 1137, 1142 (D.C. Cir. 2011). Rather, as the Board acknowledged in its order, Wendt invited Fricano to respond to its assessment of Fricano's wrongdoing. *See Baton Rouge Water Works Co.*, 246 N.L.R.B. 995, 997 (1979) (noting that if an employer informs "the employee of a disciplinary action and then seek[s] facts or evidence in support of that action" or "attempt[s] to have the employee admit his alleged wrongdoing or to sign a statement to that effect," then "the employee's right to union representation . . . attach[es]"). We therefore sustain the Board's ruling that Wendt violated Section 8(a)(1) of the Act.

**B.**

Next, Wendt contends that substantial evidence does not support the Board's determination that it violated Section 8(a)(3) and (1). Wendt disputes the Board's finding that it assigned Hudson to low-skilled saw work and denied him overtime because of his union activities.

Section 8(a)(3) "makes it an unfair labor practice for an employer 'by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor

organization[.]'" *Napleton 1050, Inc. v. NLRB*, 976 F.3d 30, 34 (D.C. Cir. 2020) (quoting 29 U.S.C. § 158(a)(3)) (alteration in original). "[A] violation of § 8(a)(3) constitutes a derivative violation of § 8(a)(1)." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 698 n.4 (1983). "To prove a § 8(a)(3) violation, the Board must first demonstrate that anti-union animus motivated the employer to take an adverse employment action." *Fortuna Enters., LP v. NLRB*, 665 F.3d 1295, 1303 (D.C. Cir. 2011). The Board applies the two-part *Wright Line* test when evaluating claims of anti-union animus. *See Tasty Baking Co. v. NLRB*, 254 F.3d 114, 125 (D.C. Cir. 2001) (citing *Wright Line*, 251 N.L.R.B. 1083, 1089 (1980)).

Under the *Wright Line* test, the Board must "determine whether an unlawful motive underlay an adverse action taken by an employer." *Napleton 1050*, 976 F.3d at 40. First, "the General Counsel must make a prima facie showing sufficient to support the inference that protected . . . conduct was a motivating factor behind the discipline." *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1072 (D.C. Cir. 2016) (citation and internal quotation marks omitted). "Relevant factors in determining an employer's motive include the employer's knowledge of the employee's union activities, the employer's hostility toward the union, and the timing of the employer's action." *Ozburn-Hessey Logistics, LLC v. NLRB*, 833 F.3d 210, 218 (D.C. Cir. 2016) (citations and internal quotation marks omitted). If the General Counsel makes a *prima facie* showing, then at step two, "the burden shifts to the company to show that it would have taken the same action in the absence of the unlawful motive." *Tasty Baking*, 254 F.3d at 126. The employer "avoid[s] an unfair labor practice finding by showing by a preponderance of evidence that the worker would have [faced an adverse employment action] even if he had not been involved with the union." *See Davis Supermarkets, Inc v. NLRB*, 2 F.3d 1162, 1167 (D.C. Cir. 1993) (citation and

internal quotation marks omitted). Importantly, this Court's review "of the Board's conclusions as to discriminatory motive is even more deferential" than the "substantial evidence standard" because "most evidence of motive is circumstantial." *Fort Dearborn Co.*, 827 F.3d at 1072 (citations and internal quotation marks omitted). And "[t]he court accepts the ALJ's credibility determinations as adopted by the Board, unless they are patently unsupportable." *Id.* (citations and internal quotation marks omitted).

Wendt argues that under the *Wright Line* test, the NLRB General Counsel failed to establish a *prima facie* case of discrimination because it did not show a causal relationship between Hudson's protected union activities and Wendt's decisions regarding Hudson's employment. Wendt argues that the Board's finding of anti-union animus hinges on plant manager Voigt's threatening comments to pro-union employees even though there is no record evidence of Voigt making such comments to Hudson specifically. Moreover, Wendt says that even if the General Counsel did establish a *prima facie* case, Wendt met its burden of showing that it would have taken the same action against Hudson absent his protected union activity because it had a "business need" to assign Hudson to saw work. Pet'r's Br. 20–21.

The Board's findings are supported by substantial evidence. First, the Board had ample evidence to support its conclusion that the General Counsel made a *prima facie* showing that anti-union animus was a motivating factor in Wendt's decision to assign Hudson to the saw and deny him overtime. The record reflects that Voigt made "repeated threats . . . [and] expressed a general threat to all employees," including "threatening to target union supporters for layoff and to get rid of 'a lot of' shop employees." J.A. 106–07. Turning to Wendt's argument that the Board improperly considered

Voigt's anti-union conduct and comments, even though he never made anti-union comments toward Hudson, we conclude that the Board did not err when it considered this evidence.

In *Parsippany Hotel Management Co. v. NLRB*, 99 F.3d 413 (D.C. Cir. 1996), we addressed an employer's argument that a general manager's anti-union speech is not evidence of anti-union animus. *Id.* at 423. The Court rejected this argument and explained that "[a] company's open hostility toward Union activity," including a manager's anti-union speech, is "clearly sufficient to establish anti-union animus on the part of that company." *Id.* (citation and internal quotation marks omitted). The Court also rejected the employer's assertion that the manager's speech "did not establish anti-union animus because [the manager] was not involved in the discharge and discipline of [the employee]." *Id.* Accordingly, the Court determined that the General Counsel established a *prima facie* case of anti-union animus under the *Wright Line* test. *Id.* at 424.

Our ruling in *Parsippany* undermines Wendt's assertion that the Board's decision to consider Voigt's anti-union comments was erroneous. *See id.* at 423–24. As the Board reasoned, Voigt's comments "expressed a general threat to all employees"—including threats to lay off union supporters like Hudson. Accordingly, it was appropriate for the Board to consider Voigt's anti-union animus. J.A. 68–69.

Furthermore, ample record evidence supports the Board's conclusion that Wendt singled Hudson out from "the other laid-off welders by denying only him any welding work and any overtime work opportunities, and instead making him the sole welder assigned exclusively to the low-skill saw." J.A. 69. Wendt also had knowledge of Hudson's status as a Union leader: Hudson was on the Union negotiation committee,

attended almost all of the bargaining sessions, was the Union's observer at the election, regularly wore Union apparel at work, and was nicknamed "The President" because he organized most of the employees. J.A. 82 & n.16. All in all, Wendt's "knowledge of [Hudson's] union activities" and Wendt's "hostility toward the union," as evidenced by Voigt's anti-union comments, are substantial evidence that Hudson's protected activities were a motivating factor in Wendt's adverse action toward him. *See Fort Dearborn Co.*, 827 F.3d at 1072 (citation and internal quotation marks omitted). And the fact that Hudson was singled out for this low-skilled work while other welders were permitted to continue welding negates Wendt's defense that it would in any event have selected Hudson for the saw work for purely business reasons, wholly apart from its anti-union animus against him.

There is likewise no merit to Wendt's claim that an inference of unlawful motive is unwarranted because it contemporaneously granted overtime to another union supporter. "An employer's failure to discriminate against every union supporter does not disprove a conclusion that it discriminated against one of them." *Handicabs, Inc.*, 318 N.L.R.B. 890, 897–98 (1995), *enforced*, 95 F.3d 681 (8th Cir. 1996). Accordingly, the Board's finding, that Wendt violated Section 8(a)(3) and (1) of the NLRA, is supported by substantial evidence in the record.

## C.

Next, Wendt challenges the Board's finding that it violated Section 8(a)(5) and (1) of the Act when it removed three positions from the bargaining unit in connection to its promotion of three unit employees into shop supervisor roles. Wendt argues that the Board's findings are not supported by substantial evidence because the total loss of unit work

attributable to the three promotions amounted to less than one full-time position. Thus, Wendt contends that it was not a material and substantial change that triggered its obligation to bargain with the Union. Wendt also argues that its unilateral transfer of the work from the vacant unit positions to non-unit employees and to shop supervisors was consistent with past practice.

"Section 8(a)(5) provides that it is 'an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees.'" *Ingredion*, 930 F.3d at 513 (quoting 29 U.S.C § 158(a)(5)). "Because a refusal to bargain necessarily interferes with bargaining, 'an employer who violates section 8(a)(5) also, derivatively, violates section 8(a)(1).'" *Ingredion*, 930 F.3d at 513 (quoting *Exxon Chem. Co. v. NLRB*, 386 F.3d 1160, 1164 (D.C. Cir. 2004)).

Substantial evidence supports the Board's finding that Wendt failed to show that its unilateral removal and transfer of unit work was consistent with an established past practice and its holding that Wendt's conduct violated Section 8(a)(5) and (1) of the Act.

We have held that the "transfer of bargaining unit work to managers and assistant managers" triggers "the employer's duty to bargain where the change results in the loss of bargaining unit jobs." *See Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 307 (D.C. Cir. 2003). In *Regal Cinemas*, this Court upheld the Board's ruling that Regal's transfer of duties of union-represented projectionists to managers and assistant managers, without bargaining with the unions, violated Section 8(a)(5) and (1) of the NLRA. *Id.* at 302–03. Even though the duties of a projectionist are limited, as "[t]he work required of a projectionist prior to the start of a film . . . takes approximately five to ten minutes," *id.* at 303, we rejected

15

Regal's argument that "the assignment of the few . . . minimal tasks [of union projectionists] to managers and assistant managers cannot . . . be characterized as a transfer of work." *Id.* at 307 (internal quotation marks and citation omitted). Even when minimal, where "the change results in the loss of bargaining unit jobs," it is a mandatory subject of bargaining. *Id.* at 307.

In this case, as the Board noted, Wendt's removal of three unit positions and transfer of their work to non-unit employees and to the newly appointed supervisors amounted to a loss of "1,372 man-hours from the unit annually, which is more than 26 hours of unit work lost each week." J.A. 72. Accordingly, the amount of unit work lost in this case far exceeded the amount lost in *Regal Cinemas.* 317 F.3d at 303–07. Thus, we are not persuaded by Wendt's assertion that there was not a material and significant loss of unit work as a result of its unilateral removal and transfer of unit work. Pet'r's Br. 43–44. The Board's findings were supported by substantial evidence.

Turning next to Wendt's past practice argument, Wendt argues that the Board's decision was not supported by substantial evidence because Wendt established a past practice of having supervisors perform unit work. Wendt obfuscates the grounds on which the Board rested its finding of an NLRA violation. As the Board noted, "[t]he issue is not whether [Wendt] may continue a past practice of supervisors performing some unit work, but whether [Wendt], when it promoted the three shop employees to supervisory positions, effectively removed their work from the unit entirely and did not replace it." J.A. 72. In any event, Wendt did not present any evidence that it had a past practice of unilaterally removing unit positions, let alone a past practice of doing what it did here: unilaterally eliminating and transferring unit work. In sum, we

sustain the Board's rejection of Wendt's past practice argument because it is supported by substantial evidence.

**D.**

Next, Wendt challenges the Board's holding that it violated the Act by delaying wage increases and performance reviews and refusing to bargain with the Union over retroactive wage increases. Wendt contends that the Board's ruling is erroneous, in part because it conflicts with another recent NLRB ruling, and also because it is unsupported by substantial evidence. The Board ruled that Wendt violated Section 8(a)(3) and (1) by failing to provide annual performance reviews and accompanying wage increases to bargaining unit employees, thereby depriving them of wage increases for approximately six months, and violated Section 8(a)(5) and (1) by failing to afford the Union an opportunity to bargain.

Substantial evidence in the record supports the Board's findings that Wendt violated the Act when it delayed unit employees' performance reviews and wage increases and refused to bargain with the Union. The record reflects that Wendt told the Union both that it could accept the offer of a 3.42 percent wage increase that applied retroactively to April 2018 before it expired and that it could continue bargaining for a 4 percent wage increase, retroactive to October 2017. Wendt then reneged on its word and refused to bargain.

Wendt also argued that the Board failed to apply the "contract coverage" standard to determine whether it was obligated to bargain with the Union on a matter covered by an agreement between itself and the Union, pursuant to the Board's ruling in *MV Transportation, Inc.*, 368 N.L.R.B. No. 66 (Sept. 10, 2019). The Board decided *MV Transportation* several months before it issued the ruling underlying this

petition. But Wendt never raised the "contract coverage" argument before the Board. Consequently, this challenge is forfeited and we lack jurisdiction to consider it. Pet'r's Br. 37; *Spectrum Health—Kent Cmty. Campus v. NLRB*, 647 F.3d 341, 348 (D.C. Cir. 2011).

**E.**

Finally, Wendt argued before the Board that its unilateral temporary layoff of 10 unit employees in February 2018 was consistent with past practice.

In its opening brief, Wendt contends that it has historically implemented layoffs during economic slowdowns, including in 2001, 2002, 2003, 2009, and 2015, when it laid off employees "based on decreases in customer orders and/or a decrease in available work." Pet'r's Br. 9–10. The Board concluded that Wendt failed to meet its burden of establishing the past practice affirmative defense.

The Board noted that Wendt had previously implemented temporary layoffs in 2001 and 2009 but held that Wendt's "use of temporary layoffs twice in 17 years falls well short of establishing a regular and consistent practice sufficient to privilege unilateral action." J.A. 70. The Board also noted that Wendt's 2009 layoff affected both non-unit and unit employees in equal numbers, whereas the 2018 layoff at issue here only affected unit employees. Accordingly, the Board ruled that Wendt did not consistently and regularly implement temporary layoffs affecting unit employees and thus unit employees could not expect or recognize the contested action as a continuation of past practice.

Wendt argues that the Board inexplicably focused on the number of layoffs Wendt has implemented, rather than Wendt's practice of laying off employees during economic

slowdowns.  In doing so, Wendt says, the Board strayed from its past precedent.  *See Raytheon Network Centric Sys.*, 365 N.L.R.B. No. 161, at \*21 (Dec. 15, 2017) ("an employer's past practice constitutes a term and condition of employment that permits the employer to take actions unilaterally that do not materially vary in kind or degree from what has been customary in the past"); *Mike-Sell's Potato Chip Co.*, 368 N.L.R.B. No. 145, at \*6 (Dec. 16, 2019) ("To establish the existence of a past practice, it is enough to show that frequent, recurrent, and similar actions have been taken . . . .") (emphasis omitted).

We do not believe the Board adequately addressed Wendt's past practice argument.  If the Board had considered all five of the past layoffs that Wendt says comprise its past practice, then the Board may have had grounds to conclude that Wendt lacked a past practice of layoffs that occurred with sufficient regularity and frequency to privilege Wendt to act unilaterally.  But the Board considered only a subset of the layoffs Wendt identified without adequately explaining the materiality of its distinctions between those considered and those excluded.  Because our review is limited to the grounds on which the Board ruled, *see Temple Univ. Hosp., Inc. v. NLRB*, 929 F.3d 729, 734 (D.C. Cir. 2019), we remand for the Board to complete its explanation of its distinctions or to consider each of the identified layoffs as materially similar in its assessment of whether Wendt's claimed past practice "occurred with such regularity and frequency that employees could reasonably expect the practice to reoccur on a consistent basis." *Mike-Sell's Potato Chip Co.*, 368 N.L.R.B. No. 145, at \*4 (Dec. 16, 2019).

19

## III.

Wendt also challenges the Board's imposition of remedies that it contends "compel the outcome of the bargaining process." Pet'r's Br. 3. We defer to the Board's remedial determinations, subject to appropriate challenges in the compliance phase. *RAV Truck & Trailer Repairs, Inc. v. NLRB*, 997 F.3d 314, 329 (D.C. Cir. 2021).

## IV.

Consistent with the foregoing discussion, the petition for review is granted in part and denied in part. The Board's cross-application for enforcement is likewise granted in part and denied in part. We remand the case for further consideration of whether Wendt's temporary layoff of unit employees in February 2018 was privileged by past practice. We summarily enforce the unchallenged portions of the Board's order. *Allied Mech. Servs., Inc. v. NLRB*, 668 F.3d 758, 765 (D.C. Cir. 2012).

Also, the Board inadvertently included two dismissed allegations in adopting the ALJ's Section 8(a)(1) violations. Wendt did not challenge those errors, but the Board has requested that in enforcing the Board's order, we correct those parts of the order and notice. Resp.'s Br. 12 n.2. Pursuant to the Board's request, we modify the order to exclude references to the two dismissed allegations and direct the Board to submit to the Court a proposed judgment conforming to this opinion. 29 U.S.C. § 160(e); FED. R. APP. P. 19.

*So ordered.*