# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Submitted November 21, 2019     Decided December 20, 2019

No. 15-1426

DHSC, LLC, DOING BUSINESS AS AFFINITY MEDICAL CENTER,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

NATIONAL NURSES ORGANIZING COMMITTEE,
INTERVENOR

———

Consolidated with 15-1499

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Bryan T. Carmody* and *Kaitlin A. Kaseta* were on the briefs for petitioner.

*Peter B. Robb*, General Counsel, National Labor Relations Board, *David Habenstreit*, Acting Deputy Associate General Counsel, *Elizabeth Heaney*, Supervisory Attorney, and *Barbara A. Sheehy*, Attorney, were on the brief for respondent.

*Nicole J. Daro* and *Carol A. Igoe* were on the brief for intervenor National Nurses Organizing Committee in support of respondent.

Before: GARLAND, *Chief Judge*, GRIFFITH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:   DHSC, LLC operated Affinity Medical Center, a hospital in Massillon, Ohio.  Seven years ago, Affinity's registered nurses voted to unionize.  The National Labor Relations Board found that Affinity committed four unfair labor practices in the following months by:  (1) disciplining, firing, and reporting to the state nursing board a pro-union nurse; (2) excluding a union organizer from the hospital; (3) threatening nurses who filled out union complaint forms; and (4) refusing to bargain with the union.  *DHSC, LLC*, 362 N.L.R.B. 654 (2015).  Because the Board's determinations with respect to the first three charges are supported by substantial evidence, and because we are without jurisdiction to review the only defense that Affinity raises to the refusal-to-bargain charge, we deny Affinity's petition for review and grant the Board's cross-application for enforcement.[1]

I

The principal unfair labor practice charge arises out of Affinity's adverse actions against a pro-union nurse soon after the union election.  The election, which the union won, took

---

[1] This petition for review and cross-application for enforcement were considered on the record from the National Labor Relations Board and on the briefs of the parties.  *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j).

place on August 29, 2012. That same day, Affinity began an investigation that led to the firing of Ann Wayt, a 23-year veteran of Affinity with no prior disciplinary record. *See DHSC*, 362 N.L.R.B. at 660 & n.8. Affinity alleged that Wayt failed to conduct a head-to-toe exam or round on a patient but recorded that she did so in the patient's chart. The next week, Affinity gave Wayt a written warning for an unrelated, alleged failure to correct a discrepancy in a medication-storage system. On September 26, 2012, Affinity fired Wayt and reported her to the Ohio Board of Nursing for the exam and recording incident.

The union filed an unfair labor practice charge alleging that Wayt's disciplinary warning, firing, and reporting were retaliation for her union support. An Administrative Law Judge (ALJ) and the National Labor Relations Board agreed.[2] Without deciding the validity of the allegations against Wayt, the Board concluded that Affinity's actions were retaliatory in light of "strong circumstantial evidence[,] . . . including the timing of discipline, the inadequate and indifferent nature of [Affinity's] investigation of Wayt's alleged misconduct, disparate treatment, and the pretextual nature of the allegations against her." *DHSC*, 362 N.L.R.B. at 654 n.4.

The second unfair labor practice charge stems from a letter sent by union organizer Michelle Mahon in Wayt's defense. That letter gave Wayt's account of the exam and recording incident, and included the patient's room number and other details but not the patient's name. Affinity's patient privacy officer, Patricia Kline, concluded that Mahon violated the Health Insurance Portability and Accountability Act (HIPAA) by

---

[2] The Board adopted the ALJ's findings and conclusions with minor modifications not relevant here. *See DHSC*, 362 N.L.R.B. at 654 & nn.3-4. For simplicity, this opinion attributes the ALJ's findings and conclusions to the Board.

copying union officials on the letter. Thereafter, Affinity banned Mahon from hospital grounds. The Board concluded that, even if Mahon had violated HIPAA, the extent of her punishment was discriminatorily motivated. *DHSC*, 362 N.L.R.B. at 654 n.4.

The third unfair labor practice charge involves union-issued complaint forms. The union encouraged nurses to use these forms to "work collaboratively" and "speak up together" about unsafe hospital practices. Hr'g Tr. 478 (J.A. 202). Hospital supervisor Susan Kress did not take kindly to the forms. According to Kress herself, she stood in her unit and said: "I feel like slapping these on your forehead so you can walk around and look how stupid you look with them." *Id.* at 684 (J.A. 257). According to another nurse, Kress said: "[I]f you fill out one of these forms, I'm going to smash it through your forehead." *Id.* at 409 (J.A. 176). That nurse also recounted other retaliation and threats Kress made to nurses who filled out the forms. The union contended that this, too, was an unfair labor practice, and the Board agreed.

The fourth unfair labor practice charge is that Affinity refused to bargain with the union, which the Board certified on October 5, 2012. Affinity acknowledges that it refused to bargain. Answer 4 (J.A. 30). It did so intentionally, in order to challenge the union's certification in the unfair labor practice proceeding. Affinity Br. 7; *see Oberthur Techs. of Am. Corp. v. NLRB*, 865 F.3d 719, 723 (D.C. Cir. 2017). The Board concluded that the union was properly certified, making Affinity's refusal to bargain an unfair labor practice.

II

Affinity's petition largely comes down to an attack on the Board's factual conclusions. We "must uphold the judgment of

the Board unless, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by substantial evidence, or that the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Am. Baptist Homes of the W. v. NLRB*, 858 F.3d 612, 614 (D.C. Cir. 2017) (internal quotation marks omitted). Substantial evidence is not a high bar. "It means -- and means only -- such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted).

The Board's decision easily clears that bar.

1.    First, the Board properly concluded that Affinity committed an unfair labor practice by disciplining, firing, and reporting Wayt. To determine whether employee discipline constitutes an unfair labor practice, we apply the Board's *Wright Line* test. *See Wright Line, a Div. of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980). To state a prima facie case, the Board's General Counsel must show: (1) that the employee engaged in protected activity; (2) that the employer knew about that activity; and (3) that "the protected activity was a motivating factor in the employer's decision to take adverse action." *Inova Health Sys. v. NLRB*, 795 F.3d 68, 80 (D.C. Cir. 2015) (internal quotation marks omitted). The employer can rebut this case by showing that "it would have taken the same action in the absence of the unlawful motive." *Id.* (internal quotation marks omitted).

The first two elements of *Wright Line* are established by the undisputed facts that Wayt's name and photograph prominently appeared on a pro-union flyer (as well as on a poster in the cafeteria) in the week before the election and that two key managers involved in her warning and firing knew about Wayt's pro-union activity. Hr'g Tr. 116-17, 151, 423-24 (J.A. 99-100,

110, 179-80); Flyer (J.A. 436). To show motive, the Board focused on the timing of the adverse actions, the inadequate investigation, and disparate treatment. All of those are relevant under our precedents. *See Inova*, 795 F.3d at 82-84; *Tasty Baking Co. v. NLRB*, 254 F.3d 114, 126 (D.C. Cir. 2001); *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 737 (D.C. Cir. 2000).

The Board's determination about motive is supported by substantial evidence. Affinity initiated the investigation that led to Wayt's firing the very day of the union election; the medication-storage incident that led to the written warning took place the next day. *DHSC*, 362 N.L.R.B. at 662, 663. With respect to Wayt's written warning, the Board noted that Wayt did not violate any hospital policy and that other nurses were not disciplined for similar conduct. *Id.* at 670. With respect to the firing and reporting, the Board found that Affinity had no basis for concluding that Wayt did not perform the head-to-toe exam when it decided to fire her, delayed interviewing a key witness until after it decided to fire her, and repeated a false claim that Wayt did not enter the patient's room for three hours. *Id.* at 661-62, 664-66.

The Board also found that Affinity treated Wayt unusually harshly. A nurse who faced similar allegations of omitting and misrepresenting care received only a warning. *Id.* at 667. In fact, the only other nurse fired or reported to the Ohio Board of Nursing for a first offense had taken a photograph of a deceased patient after the patient's eyeballs were removed for transplantation. *Id.* Collectively, this circumstantial evidence provides substantial support for the Board's determination that Affinity discriminatorily punished Wayt.

To rebut this determination, Affinity must show that, but for anti-union animus, "it *would* have fired the employee, not that

it *could* have done so." *Bally's Park Place, Inc. v. NLRB*, 646 F.3d 929, 937 n.5 (D.C. Cir. 2011) (internal quotation marks and alterations omitted). Affinity argues only that it had a valid basis for firing Wayt -- in other words, that it *could* have done so. In light of the Board's careful analysis, its conclusion that Affinity committed an unfair labor practice in disciplining, firing, and reporting Wayt is supported by substantial evidence.

2. The Board's conclusion that Affinity excluded Mahon from its property out of anti-union animus is also supported by substantial evidence. Under Board law, "selectively and disparately denying nonemployee union organizers access" to a facility is an unfair labor practice. *S. Md. Hosp. Ctr.*, 293 N.L.R.B. 1209, 1216 (1989). Kline, Affinity's privacy officer, testified that she would normally issue a verbal warning in this situation. Hr'g Tr. 1160 (J.A. 363). But when asked whether the letter "raised a different problem" because it "was sent to the individuals it was sent to," she responded that "it increased the exposure of the violation." *Id.* That testimony is ambiguous. She could have meant that Mahon's letter was worse because it went to people outside the hospital, or she could have meant that it was worse because it went to union officials. Affinity contends that Kline meant the former. The Board concluded that she meant the latter. On substantial evidence review, we defer to the Board's reasonable reading of the testimony.

3. Affinity does not dispute that Kress, the hospital supervisor, threatened and retaliated against nurses who filled out the union-issued complaint forms.[3] Instead, its sole

---

[3] The Board adopted the ALJ's findings that Kress "threaten[ed] to plaster [the] forms on the forehead of any employee who submitted such a form; more closely scrutiniz[ed] patient charts; stat[ed] how much she would enjoy disciplining a prominent union supporter; and retaliat[ed] against employees whom she suspected of submitting [the]

argument in this court is that those forms did not constitute protected activity because they were outside the hospital's usual reporting system. But it is an unfair labor practice to retaliate against employees for engaging in "concerted activities for the purpose of . . . mutual aid or protection," 29 U.S.C. § 157; *see id.* § 158(a)(1), even if those activities "ignored an employer's chain of command," *Yellow Enter. Sys.*, 342 N.L.R.B. 804, 821 (2004). The complaint forms, which the nurses used to "speak up together" about unsafe hospital practices, Hr'g Tr. 478 (J.A. 202), plainly constitute such a concerted activity.

4. Finally, the only defense that Affinity raises in this court to the refusal-to-bargain charge (a defense that it also raises with respect to the other three charges) is that the Board's Acting General Counsel lacked authority to prosecute the complaint because his continued service was invalid under either the National Labor Relations Act, 29 U.S.C. § 153(d), or the Federal Vacancies Reform Act, 5 U.S.C. § 3345(b)(1); *see Sw. Gen., Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015), *aff'd*, 137 S. Ct. 929 (2017). Those contentions need not detain us because Affinity did not raise them before the Board. As a consequence, we lack jurisdiction to consider them. 29 U.S.C. § 160(e); *H&M Int'l Transp., Inc. v. NLRB*, 719 F. App'x 3, 4 (D.C. Cir. 2018). The Board's sua sponte discussion of the Acting General Counsel's authority, *DHSC*, 362 N.L.R.B. at 654 n.1, does not excuse Affinity's failure to raise the issue on its own. *HTH Corp. v. NLRB*, 823 F.3d 668, 673 (D.C. Cir. 2016); *Contractors' Labor Pool, Inc. v. NLRB*, 323 F.3d 1051, 1061 (D.C. Cir. 2003).

---

forms by reducing the number of nurses in the intensive care unit." *DHSC*, 362 N.L.R.B. at 654 n.2.

III

For the foregoing reasons, we deny Affinity's petition for review and grant the Board's cross-application for enforcement.[4]

*So ordered.*

---

[4] Affinity advises us that its Massillon, Ohio facility closed in March 2018, nearly three years after the Board's decision. We leave it to the Board to determine in compliance proceedings how its order can be carried out. *See Bolivar Tee's Mfg. Co. v. NLRB*, 61 F. App'x 711, 711 (D.C. Cir. 2003); *Cap Santa Vue, Inc. v. NLRB*, 424 F.2d 883, 886 (D.C. Cir. 1970).