# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued December 8, 2020          Decided March 5, 2021

No. 20-1027

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL
400,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

KROGER LIMITED PARTNERSHIP I,
INTERVENOR

On Petition for Review of an Order
of the National Labor Relations Board

*Amanda M. Jaret* argued the cause for petitioner. With her on the briefs were *Carey R. Butsavage*, *Peter J. Ford*, and *James B. Coppess*.

*Milakshmi V. Rajapakse*, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Peter B. Robb*, General Counsel, *Ruth E. Burdick*, Acting Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Julie Brock Broido*, Supervisory Attorney.

*King F. Tower* and *Frank Friedman* were on the brief for intervenor Kroger Limited Partnership I in support of respondent.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: United Food and Commercial Workers, Local 400 petitions for review of a National Labor Relations Board decision dismissing an unfair labor practice complaint against Kroger Limited Partnership I. 368 N.L.R.B. No. 64 (2019). The Board contends that we lack jurisdiction to consider Local 400's objection to its decision.

Kroger operated grocery stores throughout the Mid-Atlantic region, including Store 538 in Portsmouth, Virginia. The company leased space for Store 538 in a multi-tenant shopping plaza until April 11, 2015, when Kroger permanently closed the store. Under the lease agreement, Kroger could invoke its landlord's "no[-]solicitation/no[-]loitering rule" prohibiting "all soliciting, loitering, handbilling and picketing for any cause or purpose whatsoever . . . within the Parking Areas and Common Facilities." 368 N.L.R.B. No. 64 at *2. A March 2014 letter from the landlord to Kroger stated that the proscription applied to "any protesting, demonstrating, picketing, hand billing, or related disruptive activities on the premises . . . (whether or not involving a labor union)[.]" *Id.* at *3.[1]

---

[1] As to the reason for the landlord's 2014 letter, the only evidence was the surmise of a former Store 538 manager, in testimony at the hearing on the complaint, that he "believe[d the letter] was due to the fact that the Union had come and wanted to do some solicitation at the

Over the years, Kroger did not object to charitable and civic groups who sought to raise funds or promote their organization in front of Store 538. These groups included the Girl Scouts, the Lions Club, the Salvation Army (which the company's policy supported), a breast-cancer awareness group, the American Red Cross, and local firefighters. On one occasion, a Kroger manager did ask a church group to leave, but the group returned several times without incident.

When Kroger decided to close Store 538, tensions mounted. Local 400 represented a unit of employees at the store. Kroger gave the employees the option of transferring to other Kroger stores, but not to two newly-opened stores nearby. The union opposed Kroger's decision. In the shopping center parking lot, two union agents — who were not Kroger employees — began soliciting Kroger customers to sign a boycott petition. The store manager presented the landlord's 2014 letter to the union agents and asked them to leave. They refused and stated that "they would only listen to the blue[.]" J.A. 42. A Kroger manager called the police. After the police arrived, the union members departed.

Local 400 charged Kroger with violating § 8(a)(1) of the National Labor Relations Act.[2] The Acting Regional Director issued a complaint, alleging that Kroger violated the Act by "selectively and disparately" enforcing the policy set forth in the lease and in the landlord's letter. J.A. 124–25.

---

store." J.A. 66.

[2] "It shall be an unfair labor practice for an employer —
(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title[.]" National Labor Relations Act of 1935 § 8(a)(1), 29 U.S.C. § 158(a).

*NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956), held that the Act does not give non-employee union agents a right to enter an employer's property and distribute literature unless the employer "discriminate[s] against the union by allowing other distribution." *Cf. Waremart Foods v. NLRB*, 354 F.3d 870 (D.C. Cir. 2004). The Supreme Court did not elaborate on this "discrimination" exception. A Board decision interpreting *Babcock* stated that if the employer allows "substantial civic, charitable, and promotional activities," then it cannot "prohibit the dissemination of messages protected by the Act on its private property[.]" *Sandusky Mall Co.*, 329 N.L.R.B. 618, 622 (1999), *enf't denied*, *Sandusky Mall Co. v. NLRB,* 242 F.3d 682 (6th Cir. 2001).

The Board's General Counsel argued that given *Sandusky Mall*, Kroger had violated § 8(a)(1). Kroger committed this unfair labor practice because it had not enforced the policy in the lease and in the 2014 letter against — for example — the Girl Scouts or the Salvation Army, but had invoked it when union members sought to convince customers to boycott Kroger stores. The General Counsel presented no other basis, no other argument, no other reason for finding a violation.

The administrative law judge, relying entirely on the *Sandusky Mall* rationale, agreed with the General Counsel and found that Kroger had violated § 8(a)(1).

On Kroger's administrative appeal, the Board set aside *Sandusky Mall* and similar cases and adopted a rule from another of its post-*Babcock* decisions[3]: "an employer discriminates within the meaning of the *Babcock* discrimination exception when it treats non[-]employee activities that are

---

[3] *Jean Country*, 291 N.L.R.B. 11, 12 n.3 (1988).

similar in nature disparately[.]"[4] 368 N.L.R.B. No. 64 at *15. The Board then dismissed the complaint because the activities Kroger had allowed were not comparable to Local 400's efforts to dissuade customers from patronizing Kroger stores.

Member McFerran dissented. She argued, among other things, that the Board could find a violation because the landlord's 2014 letter established that Kroger acted with union "animus." *Id.* at *22. The Board majority held that the argument was not properly before it. The General Counsel had not presented the argument and the evidence supporting it was "slim at best." *Id.* at *17 n.23. Local 400 did not seek reconsideration and, instead, filed this petition for judicial review.

Our jurisdiction is limited in the following respect: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e); *see Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66 (1982). "In each case, the critical inquiry is whether the objections made before the Board were adequate to put the Board on notice that the issue might be pursued on appeal." *Consol. Freightways v. NLRB*, 669 F.2d 790, 794 (D.C. Cir. 1981). A dissenting member's discussion of an issue is not

---

[4] The Board noted that not only the Sixth Circuit but also other circuits disagreed with *Sandusky Mall*. 368 N.L.R.B. No. 64 at *8–9; *see, e.g.*, *Salmon Run Shopping Ctr. LLC v. NLRB*, 534 F.3d 108, 116–17 (2d Cir. 2008); *Be-Lo Stores v. NLRB*, 126 F.3d 268, 284–85 (4th Cir. 1997).

Local 400 has not challenged the Board's decision to set aside *Sandusky Mall*'s interpretation of *Babcock*.

enough.  *HTH Corp. v. NLRB*, 823 F.3d 668, 673 (D.C. Cir. 2016); *Enter. Leasing Co. of Fla. v. NLRB*, 831 F.3d 534, 551 (D.C. Cir. 2016); *Contractors' Lab. Pool, Inc. v. NLRB*, 323 F.3d 1051, 1061–62 (D.C. Cir. 2003).

The jurisdictional bar serves "[t]he dual themes of notice and adjudicatory efficiency[.]"  *Local 900, Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 727 F.2d 1184, 1191 (D.C. Cir. 1984).  "[W]e are bound by it."  *HealthBridge Mgmt., LLC v. NLRB*, 798 F.3d 1059, 1069 (D.C. Cir. 2015).

As the Board pointed out, the complaint and the General Counsel alleged only "discriminatory enforcement."  368 N.L.R.B. No. 64 at *17.  Thus, the complaint charged Kroger with "selectively and disparately" enforcing the no-solicitation policy.  J.A. 124.  The General Counsel's opening statement at the hearing reaffirmed that the case presented this "single issue."  J.A. 40.  The General Counsel's briefs also stated that "[t]his case presents a singular issue: whether [Kroger] . . . disparately and discriminatorily enforced a no[-]solicitation/no[-]loitering rule against the Union[.]"  J.A. 177, 148.  The same is true of Local 400.  *See* J.A. 202–11.  Even after the Board's decision and Member McFerran's discussion of a different theory, Local 400 did not seek reconsideration.  It raised the Board dissenter's theory for the first time in this court.  That was not enough.

Local 400 presents two reasons for avoiding the bar in 29 U.S.C. § 160(e).

First, Local 400 alleges that its argument is consistent with the General Counsel's disparate enforcement argument.  It contends that the Board "rests on a faulty effort to draw distinctions between categories of discrimination cases."  Pet'r's Reply Br. 7.  It is true that the ultimate issue was discrimination.  But there were different paths to get there.  *Compare Four B*

*Corp. v. NLRB*, 163 F.3d 1177, 1184 (10th Cir. 1998) (anti-union animus), *and Cannondale Corp.*, 310 N.L.R.B. 845, 849 (1993) (discriminatory promulgation)[5], *with Sandusky Mall Co.*, 329 N.L.R.B. at 627–28 (disparate enforcement). The proceedings below focused solely on disparate enforcement of the policy, not on whether Kroger otherwise harbored animosity toward the union. Moreover, the Board majority treated Member McFerran's argument as a separate theory intended to "independently establish[] a violation of Section 8(a)(1)." 368 N.L.R.B. No. 64 at *22; *see id.* at *17 n.22. And the majority viewed it as addressing a separate question: whether "[Kroger] promulgated access restrictions in response to union activity[.]" *Id.* at *17.

Second, Local 400 argues that it raised its theory in the administrative proceedings by referring to the landlord's 2014 letter. It points to the administrative law judge's statement that the letter "clearly targeted unions and other groups[.]" J.A. 36. No one disputes that Local 400 mentioned the letter. But merely including evidence that could support an objection is not the same as urging the objection itself. Oral Arg. 5:51–6:51.

Despite this failure, we could consider the objection under extraordinary circumstances. 29 U.S.C. § 160(e). Yet Local 400 has forfeited that too. It never even alleged extraordinary circumstances in its opening brief (or in its reply brief). *See Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019).

---

[5] *Cannondale* points out that it "is settled law that an otherwise valid no-solicitation no-distribution rule violates the Act 'when it is promulgated to interfere with the employee right to self-organization rather than to maintain production and discipline.' *Harry M. Stevens Services*, 277 NLRB 276 (1985), citing cases. See also *Mack's Supermarkets*, 288 NLRB 1082, 1096-1097 (1988)." 310 N.L.R.B. at 849.

In sum, § 160(e) bars us from reviewing Local 400's objection.  Accordingly, we dismiss the petition for judicial review.

*So ordered.*