# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 22-1266**

**September Term, 2023**

FILED ON: NOVEMBER 14, 2023

NEW YORK PAVING, INC.,
        PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
        RESPONDENT

Consolidated with 22-1289

On Petitions for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

Before: SRINIVASAN, *Chief Judge*, MILLETT and PAN, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the National Labor Relations Board and on the briefs of the parties. *See* D.C. Cir. R. 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED AND ADJUDGED** that the petition for review be **DENIED** and the National Labor Relations Board's cross-application for enforcement be **GRANTED**.

\* \* \*

Petitioner New York Paving, Inc. ("NY Paving") seeks review of the National Labor Relations Board's (the "Board") affirmance of a determination by an administrative law judge ("ALJ") that NY Paving violated the National Labor Relations Act (the "Act") by laying off thirty-five of its fifty asphalt pavers. *See New York Paving, Inc.*, 371 N.L.R.B. No. 139 (Sept. 26, 2022) [hereinafter "Board Op."]. The Board affirmed the ALJ's findings that (1) the layoffs were motivated by anti-union animus; and (2) NY Paving failed to provide the asphalt pavers' union with an opportunity to bargain about the effects of the layoffs. Because the Board's decision is

supported by substantial evidence, we deny NY Paving's petition for review and grant the Board's cross-application for enforcement.

I.

NY Paving performs concrete and asphalt paving services in New York City. Board Op. 1. Local 175 is a union that represents the asphalt pavers employed by NY Paving. *Id.* On three prior occasions, Local 175 successfully pursued grievances or unfair labor practice charges against NY Paving — including one for using fewer asphalt pavers per job than was contractually required. *See id.* at 1–2.

On December 20, 2019, NY Paving announced that it was laying off thirty-five of its fifty asphalt pavers. Board Op. 2–3. In doing so, the company distributed a notice to its employees that blamed Local 175 for filing grievances that necessitated the layoffs. *Id.* Specifically, the layoff notice claimed that "Local 175 forced New York Paving to make *major changes* to [its] asphalt paving operations" by "fil[ing] many grievances and arbitrations against New York Paving." J.A. 613 (emphasis in original). The notice went on to state that NY Paving "*repeatedly warned* Local 175 that its efforts . . . would cause temporary and permanent layoffs," but "[i]t appeared to New York Paving [that] Local 175 did not care." *Id.* (emphasis in original). The notice concluded by blaming the layoffs on "Local 175's *deliberate efforts* to interfere with [NY Paving's] . . . asphalt paving operations." *Id.* (emphasis in original).

On January 17, 2020, Local 175 filed charges against NY Paving based on the layoffs, and the General Counsel of the Board filed a Complaint on April 20, 2020. The General Counsel's Complaint alleged that NY Paving committed two violations of the Act. First, it alleged that NY Paving violated Sections 8(a)(3) and 8(a)(1) of the Act by terminating the thirty-five asphalt pavers because of anti-union animus. Second, it alleged that NY Paving violated Sections 8(a)(5) and 8(a)(1) of the Act by failing to give Local 175 notice and an opportunity to bargain over the effects of the layoffs.

After a hearing, an ALJ agreed with the General Counsel and found that NY Paving violated the Act as alleged. *See* J.A. 23–86. On September 26, 2022, the Board affirmed, largely adopting the ALJ's reasoning. *See* Board Op. NY Paving petitioned this court for review, and the Board cross-applied for enforcement. *See* 29 U.S.C. § 160(e), (f).

II.

Our review of the Board's decision is "narrow and highly deferential." *Inova Health Sys. v. NLRB*, 795 F.3d 68, 73 (D.C. Cir. 2015) (cleaned up). "We will uphold a decision of the Board unless it relied upon findings that are not supported by substantial evidence, failed to apply the proper legal standard, or departed from its precedent without providing a reasoned justification for doing so." *Id.* at 80 (cleaned up). Thus, the Board "is to be reversed only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Id.* (cleaned up).

III.

We uphold the Board's conclusions that NY Paving violated the Act by (1) laying off its asphalt pavers in retaliation for protected union activity, and (2) failing to engage in effects bargaining. Both determinations are supported by substantial evidence.

A.

Substantial evidence supports the Board's conclusion that NY Paving laid off its asphalt pavers in retaliation for protected union activity. *See Ozburn-Hessey Logistics, LLC v. NLRB*, 833 F.3d 210, 217 (D.C. Cir. 2016) ("An employer violates [S]ection 8(a)(3) by taking an adverse employment action . . . to discourage union activity." (cleaned up)); *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1072 (D.C. Cir. 2016) (noting that a "violation of [Section] 8(a)(3) constitutes a derivative violation of [Section] 8(a)(1)" (cleaned up)). Where, as here, an employer purports to have relied on reasons unrelated to union activity, the Board applies the *Wright Line* test. *Ozburn-Hessey*, 833 F.3d at 215, 218 (citing *Wright Line*, 251 N.L.R.B. 1083 (1980)). Under that test, the General Counsel must make a "prima facie showing" that (1) an employee engaged in protected activity; (2) the employer knew of that protected activity; and (3) the employer had animus against the protected activity. *See id.* at 218; *DHSC, LLC v. NLRB*, 944 F.3d 934, 938 (D.C. Cir. 2019). If the General Counsel meets that burden, the employer still can avoid liability if it demonstrates "that it would have taken the same action in the absence of the unlawful motive." *Ozburn-Hessey*, 833 F.3d at 218 (cleaned up).

Substantial evidence supports the Board's determination that the General Counsel met its burden under *Wright Line*. The layoff notice itself demonstrates that NY Paving harbored animus against Local 175 for filing grievances against the company. *See* Board Op. 4 (it is "not disputed" that NY Paving knew about the prior grievances); *id.* (layoff notice "amount[ed] to direct evidence of animus"). As the Board noted, "[i]n three separate portions of the layoff notice," NY Paving blamed Local 175 and its grievances for the layoffs, leaving "no doubt" that NY Paving undertook the layoffs, at least in part, to retaliate against Local 175 for its protected activity. *Id.* That finding was bolstered by NY Paving's demonstrated animus against Local 175 in two prior Board cases, as well as by NY Paving's shifting justifications for the layoffs. *Id.* at 5.

Because the General Counsel met its burden under *Wright Line*, the burden shifted to NY Paving to demonstrate "that it would have taken the same action in the absence of the unlawful motive." *Ozburn-Hessey*, 833 F.3d at 218 (cleaned up). Substantial evidence supports the Board's conclusion that NY Paving did not meet that burden. First, although NY Paving pointed to the retirement of one of its managers as evidence that it would have laid off the asphalt pavers in any event, nothing connected that retirement of a single individual "to the need for such a large-scale layoff." Board Op. 5. Second, even though NY Paving argued that it always conducts layoffs in preparation for a winter slowdown in paving work, "[i]n each of the [four] years prior to the 2019 layoffs, [NY Paving] had laid off only five to eight employees in the asphalt unit," far fewer than the thirty-five here. *Id.* at 6. Third, though NY Paving argued that Local 175's crew-size grievance economically necessitated the layoffs, it "failed to produce evidence corroborating its defense,

3

such as financial information demonstrating that the [grievance] created financial hardship justifying the layoffs." *Id.*

NY Paving's arguments to the contrary are unpersuasive. NY Paving argues that the Board erred in relying on NY Paving's demonstrated animus towards Local 175 in prior cases because those cases occurred too long ago. But the Board concluded that its precedents allow consideration of prior cases as evidence of animus when they show a pattern of behavior. Board Op. 5. That interpretation is reasonable and we "must give deference to [the Board's] interpretations of its own precedents." *Pac. Coast Supply, LLC v. NLRB*, 801 F.3d 321, 333 (D.C. Cir. 2015) (cleaned up). Most relevantly, the Board's conclusion that NY Paving's prior cases were not too remote was reasonable on this record because, as the ALJ found, NY Paving had not fully implemented the Board's remedies from one of those prior cases by the time of the layoffs at issue in this case. Board Op. 5 n.12, 29. So the prior violation remained close in time.

Next, although NY Paving denies that its justifications for the layoffs were inconsistent and insists that it would have laid off the asphalt pavers in any event, the Board reasonably concluded that the record shows otherwise. The initial layoff notice primarily attributed the layoffs to Local 175's prior grievances and the retirement of one of NY Paving's managers. Board Op. 5. After Local 175 filed this case, NY Paving attributed the layoffs to a seasonal slowdown in paving work and the manager's retirement, suddenly falling silent about Local 175's prior grievances. *Id.* at 5, 31. Since we reverse the Board's factual determinations only when "the record is so compelling that no reasonable factfinder could fail to find to the contrary," *Inova Health Sys.*, 795 F.3d at 80 (cleaned up), the fact that NY Paving offered different reasons for the layoffs at different times, Board Op. 5, is itself sufficient to sustain the Board's factual finding of animus.

NY Paving's other arguments were not raised before the Board, and therefore are forfeited.[1] *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). That the Board considered some of those issues does not obviate NY Paving's obligation to raise objections; we are barred from reviewing issues "not *presented* to the Board, even where the Board has discussed and decided" those issues. *HealthBridge Mgmt., LLC v. NLRB*, 798 F.3d 1059, 1069 (D.C. Cir. 2015) (emphasis in original) (cleaned up). We cannot reach NY Paving's forfeited arguments, and we express no view on the Board's discussion of those arguments.

B.

Substantial evidence also supports the Board's determination that NY Paving violated the Act by failing to engage in effects bargaining. *See First Nat'l Maint. Corp. v. NLRB*, 452 U.S. 666, 681 (1981) ("There is no dispute that the union must be given a significant opportunity to

---

[1] Those forfeited arguments are (1) that Local 175's grievance activities were not protected by the Act because the grievance was filed by the union, not by employees; and (2) that NY Paving's layoff notice was protected by Section 8(c) of the Act. NY Paving also failed to preserve the argument that its layoff notice was protected by the First Amendment, but NY Paving does not attempt to raise that argument here.

bargain about . . . matters of job security as part of the 'effects' bargaining mandated by [Section] 8(a)(5)."); *NLRB v. Ingredion Inc.*, 930 F.3d 509, 513 (D.C. Cir. 2019) (noting that a violation of Section 8(a)(5) constitutes a violation of Section 8(a)(1)). Here, NY Paving did not inform Local 175 of the layoffs until December 20, 2019, the day on which the layoffs began. The Board reasonably concluded that the decision was a "*fait accompli*" at that point, and it was too late for any "meaningful" bargaining. Board Op. 36.[2]

NY Paving's challenges to the Board's conclusion are unconvincing. First, it contends that there was no bargaining requirement because its decision was economically motivated. But employers must still bargain over the effects on employees in such situations. *See First Nat'l Maint. Corp.*, 452 U.S. at 681–82. Second, NY Paving argues that it notified Local 175 of the layoffs at a mediation on October 25, 2019. But the referenced statements were vague, noting only that layoffs "could" ensue. Board Op. 36–37. Third, NY Paving argues that it did not actually implement the layoffs until January 1, 2020, which, in its view, gave Local 175 sufficient notice. As the ALJ and the Board observed, however, the layoff notice itself suggested that the layoffs were being implemented immediately. *Id.* at 36 n.60. And, in any event, the ALJ and the Board reasonably determined that a ten-day period that included Christmas, Hanukkah, and New Year's Day was not sufficient to allow meaningful bargaining. *Id.*

IV.

In summary, substantial evidence supports the Board's conclusions that NY Paving laid off its asphalt pavers in retaliation for protected union activity, and that NY Paving failed to engage in effects bargaining. We accordingly deny NY Paving's petition and grant the Board's cross-application for enforcement.

\*   \*   \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:    /s/
Daniel J. Reidy
Deputy Clerk

---

[2]    The Board adopted the ALJ's findings and conclusions on the effects-bargaining issue. *See* Board Op. 1 n.2.

5