# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-1288

**September Term, 2023**

FILED ON: MARCH 27, 2024

CADILLAC OF NAPERVILLE, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 22-1321

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board

Before: MILLETT, WILKINS, and GARCIA, *Circuit Judges*

## J U D G M E N T

This case was considered on the record from the National Labor Relations Board and the briefs and arguments of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the petition for review be **DENIED** and the National Labor Relations Board's cross-application for enforcement be **GRANTED**.

\* \* \*

Sections 8(a)(1) and (3) of the National Labor Relations Act respectively prohibit employer interference with protected union activity and employer discrimination to "discourage membership" in a union. 29 U.S.C. §§ 158(a)(1), (3). In the decision and order under review, the National Labor Relations Board concluded that automobile dealership Cadillac of Naperville

1

("Naperville") violated Sections 8(a)(1) and (3) of the Act by discharging union steward John Bisbikis following a strike. For the reasons set out below, we deny Naperville's petition for review and grant the Board's cross-application for enforcement.

I

The service mechanics at Naperville went on strike in August 2017. *See Cadillac of Naperville, Inc. v. NLRB*, 14 F.4th 703, 709 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 2650 (2022). John Bisbikis had worked as a mechanic at Naperville for fifteen years, serving as a union steward for over ten years. Frank Laskaris is Naperville's owner and president.

On June 29, prior to the strike and while negotiations on a new collective-bargaining agreement were underway, Bisbikis met with Laskaris. *Id.* at 710. Bisbikis asked Laskaris to rescind Naperville's new policy requiring workers to pay for part of the cost of their uniforms, a request Laskaris rejected. *Id.* Laskaris then referred to the "sputtering labor negotiations" and "warned" Bisbikis that "things would not be the same" if the mechanics decided to strike. *Id.* (quotation marks omitted).

Shortly after the collective-bargaining agreement expired on July 31, the mechanics went on strike. *Id.* On August 9, Naperville informed Bisbikis and five other strikers that they had been permanently replaced. *Id.* On September 15, the parties reached a settlement agreement, which the union ratified on September 17 along with a successor collective-bargaining agreement. *Id.*

On September 18, Bisbikis and two union representatives met with Laskaris to discuss the strikers returning to work. *Id.* at 710–11. At the start of the meeting, "Laskaris stated that he did not want Bisbikis present because Bisbikis was a ringleader of the strike and Laskaris no longer wanted to employ him." *Id.* at 711. One of the union representatives advised Bisbikis to leave; Bisbikis did so. *Id.* Later that morning, Bisbikis and the two union representatives returned to Laskaris's office. *Id.* When Laskaris denied ever talking with Bisbikis on June 29, Bisbikis called Laskaris a liar. *Id.* Laskaris told Bisbikis he should "get the f*** out before I get you the f*** out." J.A. 58. Bisbikis responded by calling Laskaris a "stupid jack off" in Greek. *Id.* (quotation marks omitted). As Bisbikis left the room, Laskaris said that "even if I have to take you back, now I'm firing you for insubordination." *Id.* (quotation marks omitted).

Later that day, Laskaris sent Bisbikis a "notice of termination for insubordinate conduct and inappropriate language." J.A. 59 (quotation marks omitted); J.A. 262. The letter stated that "[t]his offensive and insubordinate behavior is a direct violation of . . . Naperville's Standards of Conduct" and a "terminable action." J.A. 262.

II

The union filed a complaint against Naperville alleging, as relevant here, that Naperville violated the Act by firing Bisbikis. Over time, and in differing factual circumstances, the Board has applied different standards to determine whether a discharge allegedly prompted by an employee's statutorily protected activity violates the Act. Two are relevant here: the four-factor *Atlantic Steel* test, *Atlantic Steel Co.*, 245 N.L.R.B. 814, 816 (1979); *accord Stephens Media, LLC v. NLRB*, 677 F.3d 1241, 1252–53 (D.C. Cir. 2012), and the *Wright Line* burden-shifting

framework, *Wright Line, a Div. of Wright Line, Inc.* ("*Wright Line*"), 251 N.L.R.B. 1083, 1089 (1980); *accord Ozburn–Hessey Logistics, LLC v. NLRB*, 833 F.3d 210, 219 (D.C. Cir. 2016). Over the course of this case, the Board has applied both standards to this record—reaching, under both, the same conclusion in response to the same arguments advanced by Naperville here.

The Board initially applied the *Atlantic Steel* test and, in June 2019, concluded that Naperville's discharge of Bisbikis violated the Act. Naperville appealed. While that appeal was pending before this court, the Board issued *General Motors, LLC*, 369 N.L.R.B. No. 127 (July 21, 2020), *overruled in Lion Elastomers*, 372 N.L.R.B. No. 83 (May 1, 2023). *General Motors* held that *Wright Line*, not *Atlantic Steel*, provided the appropriate standard for analyzing the type of conduct at issue in this case, a holding *General Motors* made retroactive. *Id.* at *1–2, *10–11. In light of *General Motors*, the Board asked us to remand the issue of Bisbikis's discharge so that the Board could apply *Wright Line* in the first instance. *Cadillac*, 14 F.4th at 719. We did so. *Id.* at 720.

On remand, the Board reached the same conclusion under *Wright Line* that it had under *Atlantic Steel*—that Naperville violated the Act by firing Bisbikis. Naperville again appealed. After Naperville filed its notice of appeal (but before it filed its opening brief), the Board reversed course again, overruling *General Motors* and returning to the *Atlantic Steel* standard, a holding it again declared retroactive. *Lion Elastomers LLC*, 372 N.L.R.B. No. 83, at *3, *14 (May 1, 2023).

We uphold the Board's findings if they are "supported by substantial evidence on the record considered as a whole." *Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1072 (D.C. Cir. 2016) (quoting 29 U.S.C. § 160(e)) (quotation marks omitted).

## III

We affirm the Board's conclusion that Naperville violated Sections 8(a)(1) and (3) of the Act by discharging Bisbikis. The Board's application of the *Wright Line* standard is fully supported by substantial evidence in the record.

Under *Wright Line*, the General Counsel bears the initial burden to make out a *prima facie* case that the protected activity was a motivating factor in the adverse action. *Wright Line*, 251 N.L.R.B. at 1085–87; *accord Ozburn–Hessey*, 833 F.3d at 218. If the General Counsel meets this initial burden, the burden then shifts to the employer to show that it would have taken the adverse action anyway. *Ozburn–Hessey*, 833 F.3d at 218. If substantial evidence supports the Board's finding that the protected activity was a "motivating factor" in the adverse action, then the employer's action is unlawful unless the record as a whole compels accepting the employer's affirmative defense. *Id.* at 217–18. If the reasons advanced by the employer are pretextual, the employer necessarily fails to meet its burden. *Id.* at 218–19.

## A

In the decision and order under review, the Board concluded that the General Counsel met the initial burden to show that Bisbikis's protected activity was a motivating factor in Naperville's decision to terminate his employment by establishing that Naperville knew Bisbikis was engaged in protected activity and that Naperville exhibited animus toward that activity. Naperville

3

challenges only the Board's finding that Naperville exhibited animus towards Bisbikis's union activity. But substantial evidence supports that finding.

First, Laskaris threatened Bisbikis on June 29 that "things would not be the same" if the mechanics went on strike. *Cadillac*, 14 F.4th at 715 (quotation marks omitted); *see id.* at 716–19. Second, Laskaris made multiple threatening statements to other employees in response to their participation in the strike. *Id.* at 714–19. Indeed, as this court affirmed in the prior appeal, those threats in fact independently violated the Act, which further strengthens the inference of animus. *See id.*; *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 735 (D.C. Cir. 2000). Third, singling out Bisbikis as one of only six employees to be permanently replaced while striking is yet further evidence of animus, particularly given Bisbikis's role as a union steward, longstanding positive working relationship, and lack of disciplinary record at Naperville. *See NLRB v. Davidson Rubber Co.*, 305 F.2d 166, 169 (1st Cir. 1962).

Finally, on the same day that he discharged Bisbikis, Laskaris said he did not want Bisbikis at the meeting to discuss the strikers' return to work because Bisbikis was a ringleader and because the strike was "all [Bisbikis's] fault." J.A. 303 (quotation marks omitted). Laskaris made clear that he did not want Bisbikis or the other permanently replaced strikers to work at Naperville again. Indeed, the timing of the discharge—immediately after Laskaris's criticisms of Bisbikis's union activity—also supports the inference of animus. *See Schaeff Inc. v. NLRB*, 113 F.3d 264, 268 (D.C. Cir. 1997); *Power Inc. v. NLRB*, 40 F.3d 409, 418 (D.C. Cir. 1994). Laskaris himself articulated this connection by saying that "even if I have to take you back, now I'm firing you for insubordination." J.A. 58 (quotation marks omitted); J.A. 303.

That evidence of Laskaris's hostility to Bisbikis's union activity in connection with the 2017 strike is easily sufficient to support the Board's conclusion that Naperville exhibited anti-union animus in discharging Bisbikis. *See Wendt Corp. v. NLRB*, 26 F.4th 1002, 1011 (D.C. Cir. 2022); *Power Inc.*, 40 F.3d at 418.

Naperville's arguments to the contrary lack merit and fail to engage with key portions of the record. First, Naperville asserts that there is simply "no evidence of animus." Pet'r Br. 24–25; Pet'r Reply Br. 5. As described above, there is. Indeed, at oral argument Naperville's counsel conceded that "it would be a difficult case for us to say that there was no prima facie case." Oral Arg. Tr. 7:11–12. Second, Naperville argues that one piece of evidence the Board relied on—Laskaris's June 29 warning to Bisbikis that "things would not be the same" if the mechanics decided to strike—was irrelevant because it had no relation to the September 18 confrontation. Pet'r Br. 23. But that threat—which itself independently violated the Act, *Cadillac*, 14 F.4th at 715–16—related to the very strike that precipitated the September confrontation.

**B**

Because the General Counsel made out a *prima facie* case, the burden shifted to Naperville to show that it would have fired Bisbikis anyway. Substantial evidence supports the Board's conclusion that Naperville failed to meet its evidentiary burden. Naperville argued before the Board that Bisbikis's conduct violated the code of conduct referenced in Bisbikis's termination letter. But Naperville never introduced that code of conduct, nor did it introduce evidence that any

4

employee had previously been disciplined under it, much less for "similar" conduct. *Frazier Indus. Co. v. NLRB*, 213 F.3d 750, 761 (D.C. Cir. 2000). On appeal, Naperville suggests that firing an employee for directing an epithet toward a supervisor is simply workplace common sense, regardless of what may or may not have been in Naperville's code of conduct. The reason Naperville gave for discharging Bisbikis, however, was not that it was workplace common sense, but that Bisbikis's behavior violated Naperville's code of conduct—a justification that Naperville never substantiated. Naperville also contends—again without citation or support—that the Greek insult used by Bisbikis was so egregious that it warranted firing Bisbikis anyway. Such a bare assertion in Naperville's briefs on appeal does not change the Board's conclusion below that Naperville did not meet its evidentiary burden under *Wright Line*.

Moreover, the circumstances suggest that Naperville's stated reason for the discharge was pretext. On the very same day that Bisbikis uttered his epithet, Laskaris had already asserted that he did not want to employ Bisbikis. *Cadillac*, 14 F.4th at 711. In their later exchange, Bisbikis uttered a single insult in response to Laskaris telling him to "get the f*** out before I get you the f*** out." J.A. 58. That this occurred in the context of a workplace where profanity was "common"—as demonstrated by Laskaris's own statements in this interaction—provides even further support for the Board's conclusion. J.A. 304; *see Constellium Rolled Prods. Ravenswood, LLC v. NLRB*, 45 F.4th 234, 242 (D.C. Cir. 2022). We therefore reject Naperville's challenge to the Board's conclusion that, under the *Wright Line* test, Naperville violated Sections 8(a)(1) and (3) of the Act in discharging Bisbikis.

## IV

Given the unusual circumstances of this case, we will not remand to the Board to apply the *Atlantic Steel* standard, despite the Board's intervening decision holding that it will revert to applying *Atlantic Steel*. *See Lion Elastomers*, 372 N.L.R.B. No. 83, at *3.

Neither party seeks remand for the Board to perform (another) *Atlantic Steel* analysis. *See* Pet'r Br. 30; Pet'r Reply Br. 11; Resp't Br. 50–51. Naperville has argued throughout the entire case that *Wright Line* should apply. *See* Pet'r Br. 20, 22; Oral Arg. Tr. 18:14–21. And the Board seeks enforcement of its order applying *Wright Line*. *See* Resp't Br. 48 n.14; Oral Arg. Tr. 12:21–23, 13:10–17, 16:23–17:8. *Wright Line* has not been overruled and remains a viable standard for finding a violation under Sections 8(a)(1) and (3) of the Act, even if the Board has indicated that it now intends *Atlantic Steel* to govern a situation like this one. *See* Resp't Br. 48 n.14; Oral Arg. Tr. 12:8–12.

Moreover, the Board has already applied the *Atlantic Steel* standard to this record and reached the same conclusion that it did under *Wright Line*. Naperville's counsel also conceded at oral argument that, were we or the Board to apply *Atlantic Steel*, Naperville would not advance any arguments other than those it has advanced in this appeal. *See* Oral Arg. Tr. 4:20–5:3, 18:20–25. As we have explained, those fact-based arguments lack merit and, despite the opportunity to do so, Naperville has not offered any reason they would affect the outcome under the *Atlantic Steel* standard any more than under *Wright Line*. Remand would therefore be "an idle and useless formality" as there is no possibility that the Board will change its conclusion on this record. *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

For the foregoing reasons, we deny Naperville's petition for review and grant the Board's cross-application for enforcement.

*   *   *

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41(a)(1).

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

6